UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALAN SIMMONS, )<br>  )<br>          Plaintiff, )<br>  )<br>     v. )<br>  )<br>PAULA WOLFF, <u>et. al.</u> )<br>  )<br>          Defendants. )<br>  ) | Civil Action No.1:08CV00511 (JDB) |

### **DEFENDANTS' MOTION TO DISMISS**[1]

Paula Wolff, in her official capacity as Chief of the International Prisoner Transfer Unit ("IPTU"), Officer of Enforcement Operations ("OEO"), Criminal Division of the Department of Justice; Maureen Killion, in her official capacity as Director of the OEO; Lisa Kahn, in her official capacity as an attorney with the IPTU; and Susan Sinclair, in her official capacity as a former attorney with IPTU (collectively "Federal Defendants") hereby respectfully move to dismiss the complaint filed by Alan Simmons, <u>pro se</u>, Register No. 04778-082 ("Plaintiff").[2] Defendants move to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1),(b)(2), (b)(6).

Defendants respectfully refer the Court to the accompanying Memorandum of Points and Authorities and to the entire record in this case.

<u>Pro se</u> Plaintiff will take note that if he fails to respond to this motion to dismiss, the Court may grant this motion and dismiss his case because of his failure to respond. See <u>Fox v. Strickland</u>, 837 F.2d 507 (D.C. Cir. 1988).

---

[1] On August 4, 2008, Federal Defendants filed a Notice to the Court indicating that Plaintiff had not perfected service on them. The following day, the Court issued an Order to Show Cause permitting Federal Defendants to respond to the show cause Order or file a response to Plaintiff's complaint. Although representation authority is still outstanding because Plaintiff has not yet procured proper service on them, Federal Defendants respectfully chose the latter option afforded by the Court.

[2] In his complaint, Plaintiff erroneously names Federal Defendants as Maureen Killian, Lisa Kahm and Susan St. Claire.

Attached hereto are Defendants' Memorandum of Law in Support of Motion to Dismiss or, in the Alternative, Transfer and a proposed Order consistent with the relief sought herein.

August 12, 2008                             Respectfully submitted,

/s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/
KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C.  20530
(202) 514-7157
(202) 514-8780 (facsimile)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALAN SIMMONS, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Civil Action No.1:08CV00511 (JDB) <br> ) |
| PAULA WOLFF, et. al. | ) <br> ) |
| Defendants. | ) <br> ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Paula Wolff, in her official capacity as Chief of the International Prisoner Transfer Unit ("IPTU"), Officer of Enforcement Operations ("OEO"), Criminal Division of the Department of Justice; Maureen Killion, in her official capacity as Director of the OEO; Lisa Kahn, in her official capacity as an attorney with the IPTU; and Susan Sinclair, in her official capacity as a former attorney with IPTU (collectively "Federal Defendants") hereby submit this memorandum of points and authorities in support of their Motion to Dismiss the complaint filed by Alan Simmons, pro se, Reg. No. 04778-082 ("Plaintiff").

Plaintiff's complaint should be dismissed because sovereign immunity bars his complaint, this Court lacks jurisdiction over Federal Defendants in their official or individual capacities because Plaintiff has failed to serve Defendants properly under the Federal Rules of Civil Procedure and Plaintiff fails to state a claim upon which relief can be granted.

## I. INTRODUCTION

This action arises out of the Attorney General's denial of Plaintiff's request, under the Transfer of Offenders to or From Foreign Countries Act ("Act"), to transfer him to a Canadian prison to serve his sentence imposed by a federal court in the United States. See P.L. No. 95-144, 91 Stat. 1212, 18 U.S.C. §§4100 et seq. (1977). On or about April 4, 2007, Plaintiff, a

Canadian citizen, applied for a prison transfer to the Canadian prison system.[3] After consideration by the IPTU, the United States denied Plaintiff's transfer request on October 3, 2007.[4] By letter dated October 9, 2007, signed by Federal Defendant Paula Wolff, Chief of the IPTU, Plaintiff was advised that his transfer application was denied because of "the seriousness of the offense."

Plaintiff's request is based on a treaty between the United States and Canada ratified in 1985 under the Act, entitled the <u>Convention on the Transfer of Sentenced Persons</u>, T.I.A.S. No. 10,824, 22 I.L.M. 530 (1983) ("COE Convention").[5] Article 2 of the COE Convention sets forth the mechanics for a transfer. "A person sentenced in the territory of a Party may be transferred to the territory of another Party, in accordance with the provisions of this Convention, in order to serve the sentence imposed on him. To that end, he may express his interest to the sentencing State or to the administering State in being transferred under this Convention." COE

---

[3] This was Plaintiff's third request for transfer. Prior requests in 2002 and 2005 were denied because Plaintiff had pending collateral attacks on his sentence and because of the seriousness of the offense committed by the Plaintiff. A prisoner cannot be transferred to or from the United States if a proceeding by way of appeal or of collateral attack upon the conviction or sentence is pending. See 18 U.S.C. 4100(c).

[4] The decision to approve a transfer is based upon the entire record of the offender which is compiled from a number of sources. After the IPTU receives a complete application package from the Bureau of Prisons, in accordance with 28 C.F.R, §527.44, inquiry is then made of the prosecutor and law enforcement agency involved in the case for any additional information that might assist the IPTU in determining the propriety of the requested transfer. The United States Attorneys' Offices are responsible for furnishing facts and recommendations to the IPTU that can be considered in deciding whether to approve or deny an offender's transfer request. The information about the transfer request is evaluated within the IPTU and, pursuant to 28 C.F.R. §0.64-2, is forwarded to either the Director, Senior Associate Director, or Associate Director of the Office of Enforcement Operations for a final decision.

[5] Although the objective of the COE Convention is to transfer prisoners to their own countries if the objectives of the Convention would be furthered by transfer, the decision to approve or deny a transfer request is left entirely to the discretion of the sentencing State. Moreover, nothing in the COE Convention requires transfer unless the sentencing and administering States agree that transfer is appropriate. See COE Convention, Art. 3, part (1)(f). The COE Convention is devoid of any guidelines or factors to consider in determining whether transfer is appropriate.

Convention, Art. 2, part (2).[6]  A transfer may be requested by either the sentencing State or the administering State.  COE Convention, Art. 2, part (3).

The COE Convention also lists necessary conditions precedent which must be satisfied before a sentenced person <u>may</u> be transferred.  A sentenced person may be transferred only (a) if he is a national of the administering State; (b) if the judgment is final; (c) if he has at least six months to serve on his sentence, or his sentence is indeterminate;[7] (d) if he consents to the transfer; (e) if the acts for which he was sentenced also constitute a criminal offense if committed in the administering State; and (f) if the sentencing and administering State agree to the transfer.  COE Convention, Art. 3, part (1).

Under the Act, the Attorney General is authorized "to act on behalf of the United States as the authority referred to in a treaty," <u>see</u> 18 U.S.C. § 4102(1), and is further authorized "to delegate the authority conferred by this chapter to officers of the Department of Justice."  <u>See</u> 18 U.S.C. § 4102(11).  The Attorney General has delegated his authority to the Director, Senior Associate Director, and Associate Directors of the Office of Enforcement Operations, Criminal Division, United States Department of Justice.  <u>See</u> 28 CFR §0.64-2.[8]  The IPTU is within the Office of Enforcement Operations and has the authority to review transfer applications and to recommend approval or denial of an application.

---

[6] "[S]entencing State" means the State in which the sentence was imposed on the person who may be, or has been, transferred; "administering State" means the State to which the sentenced person may be, or has been, transferred in order to serve his sentence.  <u>See</u>, COE Convention Art. 1 (c) and (d).

[7] In exceptional cases, States may agree to a transfer even if the time to be served is less than six months.  <u>See</u>, COE Convention, Art. 3, part (2).

[8] This regulation gives the Director of the Office of Enforcement Operations, the Senior Associate Director, and Associate Directors "the authority to find the transfer of offenders to or from a foreign country under a treaty as referred to in [the Act] <u>appropriate</u> or <u>inappropriate</u>." [emphasis added].

Plaintiff, a Canadian national, is a federal inmate incarcerated at the Federal Correctional Institution (FCI) Schuylkill in Minersville, Pennsylvania where he is serving a 168-month sentence for committing federal sex offenses involving a minor.[9]  On March 24, 2008, Plaintiff filed a complaint against Federal Defendants in both their official and individual capacities, alleging that the denial of his transfer was improper because "the crime in question here had <u>nothing</u> to do with American citizens" [emphasis in original].  Pl's Compl. at ¶10.  Plaintiff further alleges that the denial of his transfer constitutes "'cruel and unusual punishment' in violation of the Eighth Amendment" because he had no contact with his family and he is in failing health.  Id. at ¶¶11, 12, 17, 18.  Plaintiff requests the following relief: punitive damages in the amount of $50 million; compensatory damages in the amount of $5,000 for each month since October 9, 2007; his immediate transfer to Canada;[10] an investigation of OEO personnel and a private attorney; and an injunction preventing the Bureau of Prisons from retaliation against him for filing the complaint.

## II.  STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court will dismiss a claim if Plaintiff's complaint fails to plead "enough facts to state a claim for relief that is plausible on its face."  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007) (clarifying the standard from <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)); <u>see also</u> <u>In re Sealed Case</u>, 494 F.3d 139, 145 (D.C. Cir. 2007) (citing <u>Twombly</u>).  Hence, the focus is on the language in the complaint, and whether that language sets forth sufficient factual allegations to support Plaintiff's claims for relief.

---

[9]  Plaintiff pled guilty to a two-count indictment charging him with Transportation of a Minor Into the United States With the Intent to Engage in Sexual Activity, in violation of 18 U.S.C. § 2423, and Sexual Exploitation of a Child, in violation of 18 U.S.C. §2251(a).  <u>See</u> Judgment in a Criminal Case <u>U.S. v. Simmons</u>, No. 1:96-cr-104-01 (D.Vt.).

[10]  While defendants do not believe this action is subject to review, if the Court disagrees and finds for the Plaintiff, the Court lacks authority to grant Plaintiff an immediate transfer to Canada because only the Attorney General or his designees have the authority to approve or disapprove Plaintiff's transfer application.  <u>See</u> 18 U.S.C. §§ 4102(1) and (11).

The court must construe the factual allegations in the complaint in the light most favorable to Plaintiff and must grant Plaintiff the benefit of all inferences that can be derived from the facts as they are alleged in the complaint. Barr v. Clinton, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing Kowal v. MCI Comm. Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)). However, the Court need not accept any inferences or conclusory allegations that are unsupported by the facts pled in the complaint. Kowal, 16 F.3d at 1276. Moreover, the Court need not "accept legal conclusions cast in the form of factual allegations." Id.

### III.   LEGAL ARGUMENT

#### A.   SOVEREIGN IMMUNITY BARS PLAINTIFF'S CLAIMS AGAINST FEDERAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212 (1983). "Absent a waiver, sovereign immunity shields the Federal Government...from suit." FDIC v. Meyer, 510 U.S. 471, 475 (1994). Congressional consent to suit, a waiver of the government's traditional immunity, must be explicit and is strictly construed. Library of Congress v. Shaw, 478 U.S. 310, 318 (1986). Absent clear congressional consent to entertain a claim against the United States, a District Court lacks authority to grant relief. United States v. Testan, 424 U.S. 392, 399 (1976). "Sovereign immunity is jurisdictional in nature." Meyer, supra, 510 U.S. at 475.

Although he seeks a recovery against Defendants in their official capacities, Plaintiff has not identified an applicable waiver of sovereign immunity for any of his claims. The Transfer of Offenders To or From Foreign Countries Act is not a waiver of sovereign immunity permitting Plaintiff to bring suit. Accordingly, Plaintiff's claims against Defendants in their official capacities essentially constitute actions against the United States, which are barred without absent an applicable waiver. Monell v. Dep't of Social Security, 436 U.S. 658, 690 n.55 (1978); FDIC v. Meyer, supra.

B.  **THE COURT LACKS JURISDICTION OVER FEDERAL DEFENDANTS BECAUSE PLAINTIFF HAS NOT PROCURED PROPER SERVICE**[11]

In order to sue Federal Defendants in their official capacities, Plaintiff is required, inter alia, to serve the Attorney General of the United States. Fed. R. Civ. P. 4(i)(2); Simpkins v. District of Columbia Gov't, 108 F.3d 366, 368 (D.C. Cir. 1997). Plaintiff has failed to serve the Attorney General.[12] Similarly, Plaintiff's claims against Federal Defendants in their individual capacities should be dismissed because Plaintiff has failed to procure proper service under the Federal Rules of Civil Procedure. Id. Therefore, Plaintiff's claims against Federal Defendants in their official and individual capacities should be dismissed for failure to comply with the service requirements set forth in the Federal Rules of Civil procedure.[13] Nor has Plaintiff plead any facts necessary to substantiate in personam jurisdiction in this Court. Edmond v. U.S. Postal Serv., 727 F. Supp. 7, 10 (D. D.C. 1989), aff'd in part and rev'd in part on other grounds, 949 F.2d 415 (D. C. Cir. 1991).

C.  **Petitioner Lacks Standing Because He Has No Private Rights Under the Treaty**

Article III of the Constitution limits federal courts to adjudicating actual cases and controversies and requires a litigant to have standing to invoke federal jurisdiction. See Allen v. Wright, 468 U.S. 737 (1984). To establish standing, a would-be Plaintiff must show an injury-in-fact traceable to the challenged action which is likely to be redressed by a favorable decision.

---

[11]  Without conceding proper service in their official capacities, because Federal Defendants have not been properly served in their individual capacities, they are not parties to this action in their individual capacities. However, should the Court determine otherwise, Federal Defendant contend that they are entitled to the defense of qualified immunity. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (government officials are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known). Under the circumstances of this case, Plaintiff did not have a clearly established right to the transfer he sought.

[12]  According to Mr. Wiggins, a docket clerk responsible for receiving service upon the Attorney General, there is no record of receipt of Plaintiff's complaint. Nor does the Court's dockets reflect service on the Attorney General.

[13]  In addition, Plaintiff's complaint is subject to dismissal under Fed. R. Civ. P. 4(m).

Id. at 751. Plaintiff cannot establish standing because the COE Convention does not confer a private right for prisoners denied transfer requests. Bagguley v. Bush, 953 F.2d 660 (D.C. Cir. 1991), cert. denied, 503 U.S. 995 (1992);[14] Coleman v. Reno, 91 F.Supp.2d 130, 132 (D.D.C. 2000) (neither the Treaty nor the Act provides a private right of action for a prisoner seeking consent of the Attorney General to transfer).

Individuals generally may not enforce treaties. In the Head Money Cases, Edye v. Robertson, 112 U.S. 580 (1884), the Supreme Court held that:

> A treaty is primarily a compact between independent nations. It depends for the enforcement of its provisions on the interest and the honor of the governments which are parties to it. If these fail, its infraction becomes the subject of international negotiations and reclamations, so far as the injured party chooses to seek redress, which may in the end be enforced by the actual war. It is obvious that with all this, the judicial courts have nothing to do and can give no redress.

Id. at 598; see Z.& F. Assets Realization Corp. v. Hull, 114 F.2d 464, 470 (D.C. Cir. 1940), aff'd on other grounds, 311 U.S. 470 (1941).

Absent an express private remedy, a state's alleged failure to observe the terms of a treaty presents a purely political question not justiciable by federal courts. Canadian Transp. Co. v. United States, 430 F. Supp. 1168 (D.D.C. 1977), aff'd in part, rev'd in part, 663 F.2d 1081 (D.C. Cir. 1980); see also, Tel-Oren v. Libyan Arab Rep., 726 F.2d 774, 808 (D.C. Cir. 1984), cert. denied, 470 U.S. 1003 (1985)(treaties of the United States, though the law of the land, do not generally create rights that are privately enforceable in courts); Dreyfus v. Von Finck, 534 F.2d 24, 29-30 (2d Cir.), cert. denied, 429 U.S. 835 (1976)(generally treaties do not contain provisions which confer rights upon the citizens of one of the contracting parties that are capable of enforcement); Restatement (Third) of the Foreign Relations Law of the United States, §907, comment a (1987)(international agreements, even those directly benefitting private persons, generally do not create private rights or provide for a private cause of action in domestic courts);

---

[14] While the issue of standing was not raised in Bagguley, as here, the treaty reviewed in Bagguley was the COE Convention.

see also, Matta-Ballesteros v. Henman, 896 F.2d 255, 259 (7th Cir.), cert. denied, 498 U.S. 878 (1990); U.S. v. Reed, 639 F.2d 896 (2d Cir. 1981)(finding that defendant had no standing to raise violation of international law where Bahamian government had not protested); cf. Casey v. Dep't of State, 980 F.2d 1472, 1476 n. 4 (D.C. Cir. 1992) (extradition treaty protects the interests and rights of only the signatory nations, rather than those of the fugitive).  "Even where a treaty provides certain benefits for nationals of a particular state-such as fishing rights-it is traditionally held that 'any rights arising from such provisions are, under international law, those of states and ... individual rights are only derivative through the state.'" United States ex rel. Lujan v. Gengler, 510 F.2d 62, 67 (2d Cir.), cert. denied, 421 U.S. 1001 (1975), quoting Restatement (Second) of the Foreign Relations Law of the United States §115, comment e (1965)[15].

"Treaties are designed to protect the sovereign interests of nations, and it is up to the offended nations to determine whether a violation of sovereign interest occurred and requires redress."[16] United States v. Zabaneh, 837 F.2d 1249, 1261 (5th Cir. 1979); see also Cornejo v. County of San Diego, 504 F.3d 853, 858-59 (9th Cir. 2007)(explaining that treaties customarily confer rights to the States that are parties to them and not individuals, even when the treaty may confer some private benefits to individuals of those states).  When no right is explicitly stated, courts look to the treaty as a whole to determine whether it evidences an intent to provide a private right of action.  See Diggs v. Richardson, 555 F.2d 848, 851 (D.C. Cir. 1976).  In order to create a private right of action redressable by the courts, "[t]he treaty must be self-executing; i.e., it must 'prescribe [] rules by which private rights may be determined.'" Columbia Marine Serv. Inc. v. Reffet Ltd., 861 F.2d 18, 21 (2d Cir. 1988)(alteration in original quoting Dreyfus v. Von Finck, 534 F.2d at 30).

---

[15]   Accord, Restatement (Third) of the Foreign Relations Law of the United States §907, comment a (1987).

[16]   The context in which transfer decisions are made cannot be ignored.  Prisoner transfer determinations have international and political ramifications.  Marquez-Ramos v. Reno, 69 F.3d 477, 480 (10th Cir. 1995).

The COE Convention contains no such provisions. Undeniably, the COE Convention benefits persons by providing for their transfer to their home countries when both the sentencing State and administering State deem it appropriate. Such benefit is not sufficient, however, to create a private right of action when a prisoner is denied transfer. Rather than creating an individual right to transfer, the COE convention merely provides that a transfer may occur, at the discretion of its signatories. Indeed, the COE Convention's preamble states that prisoners "should be given the opportunity to serve their sentences within their own society," not the right to serve their sentences in the countries of which they are nationals. See COE Convention, Preamble (emphasis added). Although the COE Convention provides that a person can request transfer, the COE Convention does not impose any requirement on the sentencing State or administering State to transfer a prisoner, nor does it confer a right on a prisoner to be transferred. Instead, the COE Convention states that a sentenced person "may" be transferred. See COE Convention, Art. 2, part (2); Art. 3, part (1). Transfer does not occur unless the sentencing and administering States agree to the transfer, see COE Convention, Article 3, part (1)(f), and the sentencing State will only request a transfer after it has determined that the transfer of the offender is appropriate. See COE Convention, Article 5, part (4); see also, Bagguley v. Bush, 953 F.2d at 663(prisoner cannot show that the Treaty requires international transfer of a prisoner upon request). Such language indicates the discretionary nature of the transfer decision and, as such does not impose a mandatory duty to transfer prisoners.[17] Nor does the COE Convention set out particularized standards or criteria to guide the Attorney General in making transfer decisions. Bagguley v. Bush, 953 F.2d at 662; Scalise v. Thornburgh, 891 F.2d 640, 649 (7th Cir. 1989), cert. denied, 494 U.S. 1083 (1990). Accordingly, there is no evidence that the COE Convention intended to provide a private right of action.

---

[17] It does not say a sentenced person "shall" be transferred or "must" be transferred if he meets certain conditions.

Accordingly, because the COE Convention does not provide for a private right of action for violation of its provisions, or prescribe rules upon which private rights may be determined, or an ability to be redressed by a favorable decision, Plaintiff lacks standing to assert a violation of the COE Convention.

### D. The Attorney General's Determination Regarding Transfer Applications is Discretionary and Not Subject to Judicial Review

Plaintiff's request should also be denied because the Attorney General's resolution of his transfer request is not judicially reviewable. Under the COE Convention and the Act, the Attorney General's decision to grant or deny a transfer request is an exercise of "unfettered discretion," in that neither sets forth "particularized standards or criteria" to guide decisions and thus neither "places any 'substantive limitation on official discretion.'" Bagguley v. Bush, 953 F.2d at 662 (quoting Olim v. Wakinekona, 461 U.S. 238, 241 (1983)); cf. Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 462-63 (1989)(explaining that a given statutory scheme gives rise to a protected interest only when it places substantive limitations on the exercise of official discretion, and contains explicit mandatory language comprising specific directives to the decision maker that if the statute's substantive predicate acts are present a particular outcome must follow). Under the Administrative Procedure Act, judicial review is not available when the "agency decision is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); see also Bagguley v. Bush, 953 F.2d at 662 and n.3 (quoting §701(a)(2)); Scalise v. Thornburgh, 891 F.2d at 648-49; see also Lincoln v. Vigil, 508 U.S. 182, 184(1993)(holding that decisions committed to agency discretion, particularly the balancing of factors within the agency's expertise, precludes judicial review).

The COE Convention, the Act, and relevant regulation clearly entrust broad discretion to the Attorney General and his designee in determining whether or not a transfer is appropriate. See COE Convention, Art. 3, part (1)(f) (a sentenced person may be transferred only if the sentencing and administering State agree to the transfer); 18 U.S.C. § 4102(3) (the Attorney

General is authorized to transfer offenders only to and from foreign countries of which they are citizens or nationals); 28 CFR § 0.64-2 (the Director, Senior Associate Director, and Associate Directors of the Office of Enforcement Operations are authorized to find the transfer of offenders appropriate and inappropriate).

Caselaw establishes that within the context of international prisoner transfer, the Attorney General or his designee has "unfettered discretion with respect to transfer decisions." Bagguley v. Bush, 953 F.2d at 662; Scalise v. Thornburgh, 891 F.2d at 648-49; see also, Coleman v. Reno, 91 F.Supp.2d 130 (D.D.C. 2000); Brancaccio v. Reno, 964 F.Supp. at 3; Marshall v. Reno, 915 F.Supp. 426, 432 (D.D.C. 1996). Such a "broad grant of discretionary authority is particularly appropriate to prison transfer decisions, depending as they do on a variety of considerations." Bagguley, 953 F.2d at 662. The COE Convention places no limits on what the Attorney General may consider. Id. at 663; Coleman v. Reno, 91 F.Supp. 2d at 132. The Attorney General is neither compelled to consider any particular factors, nor restricted from using the transfer authority for any particular purpose. Branccacio, 964 F.Supp. at 3. As noted by the Seventh Circuit in Scalise, "[w]hile these considerations may not appease those most intimately concerned, it is not our job to second guess the Attorney General's weighing of these considerations in his decision-making process. ... [S]uch discretionary decisions are the business of penologists and are not the business of federal judges." 891 F.2d at 646 (quoting Meachum v. Fano, 427 U.S. 215, 226 (1976)). "Moreover, the particular context in which transfer decisions are made cannot be ignored; such determinations have international and political ramifications that cannot be relegated to mere ministerial actions." Marquez-Ramos, 69 F.3d at 480.

The Attorney General through his designees exercised his discretion accurately and appropriately in this case. The Plaintiff's unsubstantiated allegation that the defendants denied his transfer because of their personal hatred for him is not sufficient to show any kind of

inappropriate exercise of the Attorney General's broad discretion on the part of the defendants.[18] The defendants concluded that the serious nature of the Plaintiff's sex offenses was a sufficient basis to deny his request to transfer to Canada. In light of the Plaintiff's status as a sex offender, their conclusion was a valid, discretionary decision that is not subject to judicial review. Since denial of Plaintiff's prisoner transfer request was appropriate, his continued incarceration in the United States is lawful. Plaintiff's allegations of cruel and unusual punishment amount to no more than the necessary discomforts of prison life. Accordingly, Plaintiff's claim that his continued incarceration has resulted in cruel and unusual punishment is without basis.

## IV. CONCLUSION

For the foregoing reasons stated, Plaintiff's action should be dismissed.

August 12, 2008                                  Respectfully submitted,

                                                          /s/
                                           JEFFREY A. TAYLOR, D.C. BAR # 498610
                                           United States Attorney

                                                       /s/
                                           RUDOLPH CONTRERAS, D.C. BAR # 434122
                                           Assistant United States Attorney

                                                       /s/
ROBIN KOFSKY GOLD, #395498             KENNETH ADEBONOJO
Office of Enforcement Operations             Assistant United States Attorney
Criminal Division                                Judiciary Center Building
U.S. Department of Justice                    555 4th Street, N.W. – Civil Division
                                                       Washington, D.C. 20530
                                                       (202) 514-7157
                                                       (202) 514-8780 (facsimile)

---

[18] Plaintiff alleges that the denial of his transfer request was without basis because the crimes to which he pled guilty did not involve American citizens and that defendants "obviously" denied his request because of their personal hatred towards him. Complaint ¶¶ 10-11. Plaintiff pled guilty to Transportation of a Minor Into the United States With the Intent to Engage in Sexual Activity, in violation of 18 U.S.C. § 2423, and Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a), both of which make it illegal to engage in certain conduct involving minors, regardless of the minor's nationality. Since Plaintiff was convicted of these offenses, defendants' denial of his prisoner transfer request because of the seriousness of the offense was appropriate and Plaintiff's assumption that he was denied transfer because of the defendant's hatred towards him is without basis.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALAN SIMMONS, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No.1:08CV00511 (JDB) |
| PAULA WOLFF, et. al. | ) |
| Defendants. | ) |

**ORDER**

UPON CONSIDERATION of Federal Defendants' Motion To Dismiss Plaintiff's Complaint, support thereof, the grounds stated therefore and the entire record in this matter, it is by the Court this _____ day of _____, 2008, it is hereby

ORDERED that the said motion be and hereby is granted, and

FURTHER ORDERED that this case is dismissed with prejudice.

This is a final and appealable order.

                                                         _____
                                                         HON. JOHN D. BATES, U.S.D.J.

Copies to:

Kenneth Adebonojo
Assistant United States Attorney
555 4th Street, N.W
Washington, D.C. 20530

ALAN SIMMONS,
Reg. No. 04778-082
F.C.I. Loretto
P.O. Box 1000
Loretto, Pa
15940

**CERTIFICATE OF SERVICE**

      I certify that I caused copies of the foregoing Defendants' Motion to Dismiss to be served by first class mail upon *pro se* Plaintiff at:

ALAN SIMMONS,
Reg. No. 04778-082
F.C.I. Loretto
P.O. Box 1000
Loretto, Pa
15940


on this 12th day of August, 2008     \_\_/s/_____
                                                       KENNETH ADEBONOJO
                                                       Assistant United States Attorney